UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 19-20 |
| v. | * | SECTION: T |
| WAYNE TRICHE | * | |
| | * * * | |

### FACTUAL BASIS

The New Orleans Firefighters Pension and Relief Fund (NOFPRF) administers the survivor, disability and retirement benefits for members of the fire department, their widow and minor children and for the payment of death benefits. In addition to contributions from the City of New Orleans, firefighters participate in the fund by making monthly payments through salary deductions. NOFPRF has a board of trustees that works with financial consultants to manage the investments of the fund.

In 2003, George Russell, the owner of American Pension Consultants (APC), and the defendant, **WAYNE TRICHE ("TRICHE")**, attended a board meeting to present an investment opportunity to NOFPRF. Russell developed a model to evaluate life insurance policies based on life expectancies. APC would purchase life insurance policies to be owned by NOFPRF, for less than the face value and continue to make premium payments. Due to a shorter life expectancy, when the policy holder died the NOFPRF would likely receive a profit.

After this meeting, NOFPRF decided not to accept Russell's proposal as stated. NOFPRF decided to instead sign a promissory note with APC which was intended by both NOFPRF and Russell to be secured by the purchased life insurance policies, although neither actually confected the security documentation. NOFPRF gave $5,000,000.00 to APC to purchase the policies and to

pay administrative expenses. **TRICHE** signed the note as the escrow agent on behalf of Triche and Associates, LLC., an accounting firm of which he was a member.

In 2007, the owner of APC, George Russell, died. **TRICHE** individually was appointed as the executor of the Russell estate, which included the management of APC and the investments of NOFPRF. During this time, the funds that NOFPRF provided to APC were being held in a checking account at Gulf Coast Bank & Trust, account number xxxxx1621, with signature authority held by **TRICHE**. This account was used to hold NOFPRF funds, pay the life insurance premiums, and to receive death benefits. On December 27, 2007, the account balance was $168,300.97, from which **TRICHE** withdrew $50,000 in cash.

From 2009 through 2017, the following twelve policies paid out $4,904,909.36. Of this amount, **TRICHE** paid $2,006,749 to NOFPRF, and took $937,658.77, without authority, for his personal use.

| NAME | POLICY | POLICY PAYOUT | DATE OF PAYOUT |
|---|---|---|---|
| MP | Phoenix 5900314 | $101,331.51 | 1/7/2009 |
| JP | Reassure ALI U75123 | $306,741.04 | 1/27/2009 |
| WM | Jackson National LI 07926640 | $104,793.77 | 6/23/2009 |
| MZ | Transamerica 07509500 | $2,246,193.95 | 12/16/2009 |
| SG | John Hancock 67107634 | $152,454.15 | 4/2/2012 |
| DS | Sun Life 020065776 | $631,114.79 | 12/6/2013 |
| MS | Lincoln National 7103768 | $814,052.08 | 3/11/2014 |
| JG | First Colony 1992181 | $102,428.89 | 2/20/2015 |
| JG | Security Connecticut 1090458K | $100,649.50 | 2/26/2015 |
| WH | Protective Life CL0361504 | $2,300.45 | 12/23/2015 |
| RL | Standard IC 00X5394230 | $70,000.00 | 10/7/2016 |
| LM | Fidelity M015083 | $272,849.23 | 2/28/2017 |

In 2014, **TRICHE** requested and began to receive thousands of dollars each month from NOFPRF to pay the premiums on the remaining life insurance policies. When NOFPRF asked for an accounting, **TRICHE** provided no payment or banking details. The only information given by **TRICHE** was a partial list of policies that were purchased on behalf of NOFPRF. He never

disclosed to NOFPRF the total amount received from the policy payouts nor did he tell NOFPRF that he had kept any of the funds for his personal use. Instead, he told NOFPRF representatives that the investment was not profitable. **TRICHE** concealed the fact that APC had received over $4,000,000.00 from policy payouts. He did this by writing checks, withdrawing cash, and initiating bank transfers from the APC bank account to accounts that he controlled.

For example, **TRICHE** transferred $144,537.00 to two Gulf Coast Bank & Trust checking accounts, numbers xxxxx8150 and xxxxx2477, for BBTB, LLC, a real estate business that he owned. From those accounts he received cash withdrawals and gambled at casinos. He transferred $238,916.00 to Double Diamond Rentals, a real estate rental company that he controlled, through a checking account at State Bank and Trust, number xxxxx2146. From this account he paid a mortgage on a commercial property that he owned and took cash withdrawals.

**TRICHE** also took $137,011.00 in cash and wrote checks for personal expenses out of the APC checking account. On May 8, 2014, utilizing APC funds, he obtained a cashier's check for $144,935.50 and used it to pay the Clerk of Court, United States District Court in the Middle District of Louisiana for a civil judgment against him personally. He also paid the attorneys who represented him in that case with a check for $97,459.00. Other expenses paid from the APC account were to American Express for personal credit card purchases and the East Baton Rouge Sheriff's Office for his property taxes. Additionally, $794,762.00 was transferred to **TRICHE's** personal bank accounts and used for expenses not associated with APC or NOFPRF, such as home improvements and living expenses.

All Gulf Coast Bank and Trust transactions are processed through a server located in Dallas, Texas. Thus, each wire transfer, check cashed, call in and teller transactions, and transfers from one account to another made by **TRICHE** were all transmitted by way of wire

communications in interstate commerce. The parties stipulate and agree that the loss to NOFPRF as a result of the wire fraud scheme is $937,658.77.

Further, in years 2011, 2012, 2013, and 2014, **TRICHE** and his wife filed false individual tax returns under penalties of perjury. **TRICHE's** tax returns falsely stated his income by not including the money that he fraudulently obtained from APC and the NOFPRF investment. This resulted in an understated amount of tax due each year. Specifically, on January 11, 2013, in the Eastern District of Louisiana and elsewhere, for the calendar year 2011, **TRICHE** signed and filed a U.S. Individual Income Tax Return (Form 1040), which was verified by a written declaration that it was made under the penalties of perjury. **TRICHE** falsely stated that his adjusted gross income was $238,815.00, knowing that he had unreported income.

**TRICHE** was aware of his obligation to truthfully disclose all income received on his tax forms. However, he willfully failed to disclose the additional income he received from his fraudulent conduct. This resulted in an understated amount of tax due each year. The total tax due and owing to the Internal Revenue Service for tax years 2011, 2012, 2013, and 2014 is $329,895.00.

READ AND APPROVED:

_____  3-16. 2022
WAYNE TRICHE              Date
Defendant

_____  3/16/2022
C. FRANK HOLTHAUS          Date
BRIAN J. CAPITELLI         3/16/22
Defense Counsel

_____  3/16/22
TRACEY N. KNIGHT           Date
Assistant United States Attorney